# No. 23-12346

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

**FAMA CONSTRUCTION, LLC,**

**Petitioner,**

**v.**

**SECRETARY OF LABOR, U.S. DEPARTMENT OF LABOR**

**Respondent.**

_____

On Petition for Review of a Final Order of the
Occupational Safety and Health Review Commission
(Administrative Law Judge John B. Gatto)

_____

**BRIEF FOR THE SECRETARY OF LABOR**

_____

SEEMA NANDA
Solicitor of Labor

EDMUND C. BAIRD
Associate Solicitor for
    Occupational Safety and Health

HEATHER R. PHILLIPS
Counsel for Appellate Litigation

AMY S. TRYON
Senior Attorney
U.S. Department of Labor
200 Constitution Ave. NW, Room S-4004
Washington, DC 20210
(202) 693-5447

March 15, 2024

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Undersigned counsel hereby certifies that she knows the following persons to have an interest in the outcome of this case:

Baird, Edmund C., Department of Labor Associate Solicitor

Bishop, Rachel M., Department of Labor Attorney

Cerveny, John X., Executive Secretary, U.S. OSHRC

Dailey, Jeremy, Department of Labor Attorney

Gatto, John B., Administrative Law Judge, U.S. OSHRC

Graeber, Rachel L., Department of Labor Attorney

Gross, Andrew N., Attorney for Petitioner

Howard, Tremelle I., Department of Labor Regional Solicitor

Nanda, Seema, Solicitor of Labor

Phillips, Heather R., Department of Labor Attorney

Tryon, Amy S., Department of Labor Attorney

**STATEMENT REGARDING ORAL ARGUMENT**

The Secretary believes that the briefs in this case constitute a thorough presentation of the facts and legal issues and does not think oral argument would significantly assist the Court in deciding the issues before it.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
   DISCLOSURE STATEMENT ........................................................... i

STATEMENT REGARDING ORAL ARGUMENT .............................................. ii

TABLE OF CONTENTS.................................................................... iii

TABLE OF AUTHORITIES ................................................................ v

STATEMENT OF JURISDICTION......................................................... 1

STATEMENT OF THE ISSUES........................................................... 1

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................. 2

STATEMENT OF THE CASE............................................................. 2

    **I.**   **Nature of the Case and Procedural History** ......................... 2

    **II.**  **Statement of Facts** ................................................. 3

        A. Statutory Background ................................................. 3

        B. OSHA Enforcement at Multi-Employer Worksites.................... 5

        C. Fama's Roofing Operations and OSHA's Inspection at the
           Riley Place Worksite..................................................... 7

        D. The ALJ's First Decision .......................................... 10

        E. The Commission's Remand Order .................................. 12

        F. The ALJ's Second Decision......................................... 13

    **III.** **Standard of Review** ................................................. 14

**SUMMARY OF THE ARGUMENT** ..................................................... 15

**ARGUMENT** ....................................................................... 16

I. **Substantial Evidence Supports the ALJ's Finding that Fama Was Liable as a Controlling Employer Because Fama Had Authority Over Safety Conditions at the Worksite and Failed to Conduct Any Inspections Whatsoever Despite Knowing the Crew Had a History of Safety Violations.** ...................................................................16

    A. Substantial Evidence Supports the ALJ's Finding that Fama Was a Controlling Employer Because It Had the Ability and Authority to Correct the Roofing Workers' Safety Violations.17

    B. Substantial Evidence Supports the ALJ's Finding that Fama Failed to Exercise Reasonable Care to Detect and Prevent the Workers' OSHA Violations by Entirely Forgoing Workplace Inspections ...............................................................................22

II. **The ALJ Properly Granted Summary Judgment to the Secretary as to Fama's Affirmative Defense of Economic Infeasibility Because the Defense Has Two Elements and Fama Entirely Failed to Present Any Evidence Concerning the Second Element.** .........................................25

III. **Fama's Assorted Attacks on OSHA's Multi-Employer Citation Policy Are Forfeited And/Or Lack Merit.** ...........................................29

**CONCLUSION**.................................................................................................34

**CERTIFICATE OF COMPLIANCE**

**CERTIFICATE OF SERVICE**

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Acosta v. Hensel Phelps Constr. Co.*,
909 F.3d 723 (5th Cir. 2018) ................................................... 5, 16, 17

*Armor Elevator Co., Inc.*,
1 BNA OSHC 1409, 1973 WL 4264 (Nos. 425 & 426, 1973) ........................... 19

*Armstrong Steel Erectors, Inc.*,
17 BNA OSHC 1385, 1995 WL 561592 (No. 92-262, 1995) ........................... 27

*Beatty Equip. Leasing, Inc. v. Sec'y of Labor*,
577 F.2d 534 (9th Cir. 1978) .................................................. 6

*Blue Cross & Blue Shield of Alabama v. Weitz*,
913 F.2d 1544 (11th Cir. 1990) ............................................... 25

*Brennan v. OSHRC*,
513 F.2d 1032 (2d Cir. 1975) ................................................. 6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................................................... 13, 28

*Centex-Rooney Constr. Co.*,
16 BNA OSHC 2127 (No. 92-0851, 1994) ......................................... 22

*Cuyahoga Valley Ry. v. United Transp. Union*,
474 U.S. 3 (1985) .......................................................... 32

*Fama Construction, LLC v. U.S. Department of Labor*,
2022 WL 2375708 (11th Cir. June 30, 2022) ............................... passim

*Fluor Daniel v. OSHRC*,
295 F.3d 1232 (11th Cir. 2002) ........................................... 14, 15

*Gregory & Cook, Inc.*,
    17 BNA OSHC 1189, 1995 WL 242603 (No. 92-1891, 1995) .................... 26, 27

*Grossman Steel & Aluminum Corp.*,
    4 BNA OSHC 1185 (No. 12775, 1976)..............................................................22

*IBP, Inc. v. Herman*,
    144 F.3d 861 (D.C. Cir. 1998) ....................................................... 18, 21

*J.A.M. Builders, Inc. v. Herman*,
    233 F.3d 1350 (11th Cir. 2000) .........................................................15

*M.C. Dean, Inc. v. Secretary of Labor*,
    505 Fed. App'x 929 (11th Cir. 2013) ........................................... 26, 27

*Martin v. OSHRC*,
    499 U.S. 144 (1991)..............................................................................4

*McDevitt St. Bovis, Inc.*,
    19 BNA OSHC 1108 (No. 97-1918, 2000) ......................... 16, 17, 18

*Off. of Thrift Supervision v. Paul*,
    985 F. Supp. 1465 (S.D. Fla. 1997) ...................................................28

*Solis v. Summit Contractors, Inc.*,
    558 F.3d 815 (8th Cir. 2009) ....................................................... 6, 32

*Stormforce of Jacksonville*,
    2021 WL 2582530 (OSHRC No. 19-0593, 2021) ...............................6

*Summit Contractors, Inc.*,
    22 BNA OSHC 1777 (No. 03-1622, 2009) ........................... 6, 22, 33

*Suncor Energy (U.S.A.) Inc.*,
    27 BNA OSHC 1713 (No. 13-0900, 2019) ........................................22

*Teal v. E.I. DuPont de Nemours & Co.*,
    728 F.2d 799 (6th Cir. 1984) ..............................................................6

*United States v. Pitt-Des Moines, Inc.*,
    168 F.3d 976 (7th Cir. 1999) ...................................................................6

*Universal Constr. Co. v. OSHRC*,
    182 F.3d 726 (10th Cir. 1999) ..............................................................5, 6

## Statutes

5 U.S.C. § 553(b)(A).................................................................................32
5 U.S.C. § 706(a)(2)..................................................................................15
29 U.S.C. § 651(b) ......................................................................................3
29 U.S.C. § 659(a) ......................................................................................4
29 U.S.C. § 659(c) ...................................................................................1, 4
29 U.S.C. § 660(a) ........................................................................... 1, 14, 30
29 U.S.C. § 660(b) ...................................................................................1, 3
29 U.S.C. § 661(j).......................................................................................4
29 U.S.C. §§ 651–678..................................................................................1
29 U.S.C. §§ 659, 661 .................................................................................4

## Rule

Fed. R. Civ. P. 56(e)...............................................................................25

## Regulations

29 C.F.R. § 1926.100(a)...........................................................................10
29 C.F.R. § 1926.20(b)(2).........................................................................10
29 C.F.R. § 1926.501(b)(13)......................................................................10
29 C.F.R. § 2200.90(d) ..............................................................................4
29 C.F.R. § 2200.90(f) ...............................................................................3
29 C.F.R. § 2200.91(a)...............................................................................4

# STATEMENT OF JURISDICTION

This matter arises from an enforcement proceeding brought by the Secretary of Labor (Secretary) before the Occupational Safety and Health Review Commission (Commission) under the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678 (OSH Act). The Commission had jurisdiction over this proceeding under 29 U.S.C. § 659(c). The Commission issued its final order in the case on June 12, 2023, and Petitioner Fama Construction, LLC (Fama) filed its petition for review with this Court on July 20, 2023, within the sixty-day period prescribed by the OSH Act. *See* 29 U.S.C. § 660(a). This Court has jurisdiction over the petition for review under 29 U.S.C. § 660(b).

# STATEMENT OF THE ISSUES

1. Whether substantial evidence supports the administrative law judge's (ALJ) finding that Fama was liable for the roofing crew's safety violations as a controlling employer where Fama's management admitted to having control over workplace safety issues and Fama shirked its duty of reasonable care by failing to conduct any workplace safety inspections.

2. Whether the ALJ properly granted summary judgment to the Secretary as to Fama's asserted affirmative defense of economic infeasibility where the defense has two elements and Fama failed to put forth any evidence about the second element.

3. Whether Fama forfeited its general challenges to the multi-employer citation policy and the definition of controlling employer by failing to raise them below; and if not, whether the challenges should be dismissed for entirely lacking merit.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court. In a 2022 decision, this Court affirmed an OSHA citation against Fama that involved some of the same issues as the present case. *Fama Construction, LLC v. U.S. Department of Labor*, 2022 WL 2375708 (11th Cir. June 30, 2022).

## STATEMENT OF THE CASE

### I.     Nature of the Case and Procedural History

This case began when the Occupational Safety and Health Administration (OSHA)[1] issued Fama a citation alleging that Fama had violated several of OSHA's construction standards governing roofing safety. On January 10, 2023, a Commission ALJ granted the Secretary's motion for summary judgment and affirmed the citation. *Sec'y of Labor v. Fama Construction, LLC* (OSHRC No. 19-

---

[1] The Secretary's responsibilities under the OSH Act have been delegated to an Assistant Secretary who directs OSHA. Secretary's Order 08-2020, 85 Fed. Reg. 58393 (2020). The terms "Secretary" and "OSHA" are used interchangeably in this brief.

1467, 2023) (ALJ) (hereinafter "ALJ Decision I"). Fama sought discretionary

Commission review of the ALJ's decision. The Commission directed review and,

on March 29, 2023, issued an order remanding the case to the ALJ for further

discussion and findings on two specific points (hereinafter "Remand Order"). On

April 13, 2023, the ALJ issued a second decision granting summary judgment to

the Secretary (hereinafter "ALJ Decision II").[2] Fama again sought discretionary

Commission review, which was not directed; the ALJ's April 13, 2023 decision

accordingly became a final order of the Commission. *See* 29 C.F.R. § 2200.90(f).

Fama then filed a timely petition for review of the Commission final order with

this Court under 29 U.S.C. § 660(b).

## II.    Statement of Facts

### A. Statutory Background

The OSH Act is intended "to assure so far as possible every working man

and woman in the Nation safe and healthful working conditions and to preserve our

human resources." 29 U.S.C. § 651(b). To achieve the Act's purposes, Congress

authorized the Secretary of Labor "to set mandatory occupational safety and health

standards" with which employers must comply. *Id.* §§ 651(b)(3), 654(a)(2), 655.

---

[2] The ALJ's first decision is found at Doc. 14-2, pages 1-15 of Petitioner's
Appendix. The Commission's remand order is found at Doc. 14-3, pages 1-5 of
Petitioner's Appendix. The ALJ's second decision is found at Doc. 14-4, pages 1-
5 of Petitioner's Appendix. Pages cited herein use the page numbers found at the
bottom of the respective decisions.

The OSH Act also contains a general duty clause, which requires an employer to provide a work environment "free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." *Id.* § 654(a)(1). OSHA enforces both its standards and the general duty clause by issuing citations to employers when violations occur. 29 U.S.C. § 659(a). Violations are characterized as "serious," "other-than-serious," "willful," or "repeated." *Id*. § 666(a)-(c). In appropriate cases, OSHA also proposes civil penalties against cited employers.

If an employer contests an OSHA citation, the matter is adjudicated by the Commission, an independent adjudicatory body. *See* 29 U.S.C. §§ 659, 661; *see also Martin v. OSHRC*, 499 U.S. 144, 152 (1991) (Commission is a "neutral arbiter" for adjudicating disputes between employers and OSHA). Initially, an ALJ appointed by the Commission hears the dispute. *See* 29 U.S.C. §§ 659(c), 661(j). A party adversely affected by the ALJ's decision may petition for discretionary review of the decision by the Commission. *See* 29 U.S.C. § 661(j); 29 C.F.R. § 2200.91(a). If the Commission does not grant review, the ALJ's decision becomes a final order of the Commission by operation of law. 29 C.F.R. § 2200.90(d). Final orders of the Commission are reviewable in the courts of appeals. 29 U.S.C. §§ 659(c), 660(a), (b).

**B. OSHA Enforcement at Multi-Employer Worksites**

For decades, the Secretary has enforced the OSH Act by issuing citations to multiple employers at a single worksite, including employers who create or control hazardous conditions to which another employer's employees are exposed.  *See Universal Constr. Co. v. OSHRC*, 182 F.3d 726, 728 (10th Cir. 1999) (describing OSHA's "multi-employer doctrine").  This situation commonly arises on construction sites or other worksites with a general contractor and one or more subcontractors.

Under OSHA's current multi-employer citation policy, which has been in effect since 1999, an employer who causes a hazardous condition (a "creating employer") or an employer with control over a worksite who should have detected and prevented a violation through the reasonable exercise of its supervisory authority (a "controlling employer") may be cited for a violation, whether or not its own employees were exposed to the hazard.  *See* OSHA Instruction CPL 2-00.124, *Multi-Employer Citation Policy* (Dec. 10, 1999) (*MECP*)[3]; *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 727, 743 (5th Cir. 2018) (upholding OSHA's

---

[3] The Multi-Employer Citation Policy is found at Ex. A to the Secretary's Renewed Motion for Summary Judgment (Certified List No. 58) and is also available publicly at https://www.osha.gov/enforcement/directives/cpl-02-00-124.

authority to issue citations to controlling employers).[4]  A controlling employer is one that could reasonably be expected to prevent or detect and abate OSHA violations due to its supervisory authority and control over the worksite. *Stormforce of Jacksonville*, 2021 WL 2582530, at *3 (OSHRC No. 19-0593, 2021).  A controlling employer's duty to exercise reasonable care "'is less than what is required of an employer with respect to protecting its own employees,'" *Summit Contractors, Inc.*, 22 BNA OSHC 1777, 1781 (No. 03-1622, 2009) (quoting *MECP* ¶ X.E.2.)

---

[4] Six other courts of appeals have also held that the multi-employer citation policy is a valid exercise of the Secretary's statutory enforcement authority.  *See Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 818 (8th Cir. 2009); *Universal Constr. Co. v. OSHRC*, 182 F.3d 726, 727–32 (10th Cir. 1999); *United States v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 982 (7th Cir. 1999); *Teal v. E.I. DuPont de Nemours & Co.*, 728 F.2d 799, 803–04 (6th Cir. 1984); *Beatty Equip. Leasing, Inc. v. Sec'y of Labor*, 577 F.2d 534, 536–37 (9th Cir. 1978); *Brennan v. OSHRC*, 513 F.2d 1032, 1037–38 (2d Cir. 1975).

### C. Fama's Roofing Operations and OSHA's Inspection at the Riley Place Worksite[5]

Fama is a company that provides roofing services. SUMF ¶ 9. Fama is owned by Francisco Martinez, who manages the company with his daughter, Cynthia Osorio. SUMF ¶¶ 10-11.

On March 20, 2019, OSHA Compliance Safety and Health Officer (CSHO) Marc Greenfield drove by a residential construction site at Riley Place in Dawsonville, Georgia, and witnessed a worker moving shingle packets on a roof approximately 25 feet above the ground without fall protection. SUMF ¶¶ 1-2. He also witnessed a worker operating a shingle elevator from the ground without a hardhat. SUMF ¶ 4. CSHO Greenfield initiated an inspection of the worksite. SUMF ¶¶ 1, 3. The workers scattered when CSHO Greenfield approached, but he recognized two of them from previous inspections and knew they were associated with Fama. SUMF ¶¶ 7-8.

Fama held the exclusive roofing contract for townhomes at Riley Place. SUMF ¶ 12. Fama offered the work on March 20, 2019 to a crew including Antonio Cardenas and Carlos Galicia. SUMF ¶¶ 7, 13. Cardenas and Galicia have

---

[5] All of the facts listed in this section are, as the ALJ found, undisputed. *See* ALJ Decision I at 2. The facts here are taken from the Statement of Undisputed Material Facts (SUMF) submitted with the Secretary's Renewed Motion for Summary Judgment (Certified List No. 58). The ALJ found that Fama did not dispute any of the Secretary's facts and did not establish any undisputed material facts of its own. *Id.* at 2 n.3.

a relationship with Fama going back over ten years. SUMF ¶ 14. Cardenas was the worker the CSHO saw on the ground without a hardhat and Galicia was the worker the CSHO saw on the roof without fall protection. SUMF ¶ 7.

OSHA has inspected Fama at least seven times since 2013. SUMF ¶ 16. After each of those inspections, OSHA issued Fama a citation for fall protection violations, and all of the citations were affirmed as final orders of the Commission. SUMF ¶¶ 17-18. The most recent of these prior citations was affirmed by this Court in *Fama Construction, LLC v. U.S. Department of Labor*, 2022 WL 2375708 (11th Cir. June 30, 2022) ("*Fama I*"). CSHO Greenfield had been present at six previous Fama inspections and had met Galicia and Cardenas on Fama worksites at least three times prior to March 20, 2019. SUMF ¶ 19.

Martinez and Osorio, Fama's owner and co-manager, admitted that Fama had the power to stop unsafe behavior and to take workers down from a roof. SUMF ¶ 28. At the time of the inspection, the leader of the crew was Antonio Ortega. SUMF ¶ 15. Fama's contract with Ortega required the crew to comply with OSHA regulations, utilize a safety program, and conduct weekly toolbox talks; the contract also required Ortega to conduct safety inspections.[6] SUMF ¶¶

---

[6] When CSHO Greenfield interviewed Ortega, Ortega denied understanding the English contract he had signed and claimed it was Fama's responsibility to ensure the workers comply with OSHA regulations. SUMF ¶ 47.

29, 46.  Fama could discipline workers or crew leaders for failing to comply with safety requirements.  SUMF ¶ 30.  The safety policies that Fama required its work crews to follow went beyond OSHA's regulations and included things like a prohibition against cell phone use while working on a roof.  SUMF ¶ 31.  Fama expected workers to report safety concerns and injuries to Fama.  SUMF ¶ 32.  The builder's superintendent on the worksite believed that the workers sent by Fama were Fama's employees, and Cardenas informed OSHA that he believed that he and Galicia were Fama's employees.[7]  SUMF ¶¶ 40-41.  When Martinez, Fama's owner, learned that CSHO Greenfield was conducting an inspection, he ordered the work crew to leave the worksite, which they did.  SUMF ¶ 35.

At some time prior to March 20, 2019, Fama made an effort to train its workers on the importance of following safety regulations, including the use of fall protection.  SUMF ¶ 22.  Fama was also supposed to conduct inspections of its worksites as part of the settlement of previous OSHA citations.  SUMF ¶¶ 23-24.  By March 20, 2019, Fama had ended its training program and terminated safety inspections of its worksites.  SUMF ¶ 26.  Martinez and Osorio confirmed that

---

[7] As explained further below, the Secretary advanced the theory that Fama was the employer of Cardenas and Galicia as well as the alternative theory that Fama was liable as a controlling employer.  The ALJ, agreeing with the latter theory, did not address the former.

Fama does not conduct safety inspections.[8]  SUMF ¶¶ 27, 45, 72.  Although Fama

will not go to a worksite for purposes of inspecting a work crew, Fama has

exercised control over the workers on the rare occasion when Fama's managers

happen upon workers.  SUMF ¶ 33.  Some workers Fama caught flagrantly

violating safety rules over the years have been terminated from working with the

company.  SUMF ¶ 37.

On August 28, 2019, following CSHO Greenfield's inspection, OSHA

issued Fama a citation alleging violations of three different construction standards:

29 C.F.R. § 1926.20(b)(2), which requires employers to have a program for regular

inspections of job sites; 29 C.F.R. § 1926.100(a), which requires hardhats for

employees exposed to falling objects; and 29 C.F.R. § 1926.501(b)(13), which

requires workers at certain heights to use fall protection.  *See* ALJ Decision I at 12-

13; Complaint at 4-6.

### D. The ALJ's First Decision

Fama contested the citation and the case was assigned to ALJ John B. Gatto.

The Secretary moved for summary judgment on two alternative theories of

liability: first, that the undisputed evidence showed that Fama was the employer of

Galicia and Cardenas; and second, that Fama was liable for the violations as a

---

[8] When asked why Fama no longer inspected job sites, Osorio told CSHO
Greenfield, "We just don't check on them because they are subcontractors and we
were told by the attorney to not check on them."  Ex. C to Sec'y MSJ at 2.

controlling employer under OSHA's Multi-Employer Citation Policy.[9]  Sec'y MSJ at 8.  On January 10, 2023, the ALJ issued an opinion and order granting the Secretary's motion and affirming the citation against Fama.  The ALJ did not address the Secretary's first theory of liability but found that the undisputed evidence showed that Fama was a controlling employer with respect to the roofing activities at the Riley Place worksite.  ALJ Decision I at 11.  He reviewed the undisputed facts cited above and found that Fama had "sufficient authority . . . to qualify as a controlling employer" because Fama admitted to having actual control over worksite safety and to, at least occasionally, exercising that control.  *Id.* at 10.  Accordingly, the ALJ found that "Fama was a controlling employer with an obligation to protect the roofing workers even if they were not Fama's employees."  *Id.*

The ALJ also granted summary judgment to the Secretary with respect to an affirmative defense Fama had raised in its amended Answer: the affirmative defense of economic infeasibility.  ALJ Decision I at 14.  He found that Fama had not properly supported its claim of economic infeasibility and therefore had not established the existence of a genuine issue of material fact with respect to that defense.  *Id.*  The ALJ accordingly affirmed the citation against Fama.  *Id.* at 17.

---

[9] There was and is no dispute that the cited standards were violated.  *See* ALJ Decision I at 12-14.

### E. The Commission's Remand Order

Fama sought discretionary Commission review of the ALJ's decision, and the Commission directed review. On March 29, 2023, the Commission issued a remand order with instructions for further action by the ALJ with respect to two specific points. First, the Commission agreed with the ALJ's conclusion that the undisputed material facts showed that Fama was a controlling employer with regard to the Riley Place worksite. Remand Order at 3. The Commission found, however, that the ALJ had not engaged in the proper legal analysis to determine whether Fama fulfilled its obligations as a controlling employer, which are less stringent than the obligations of an employer whose own employees are exposed to the hazardous conditions. *Id.* The Commission directed the ALJ to consider Fama's liability under that less stringent metric, which asks whether a controlling employer has taken "reasonable measures" to protect the exposed employees. *Id.*

Second, the Commission found that the ALJ improperly placed the burden of proof regarding Fama's affirmative defense of economic infeasibility on Fama. *Id.* at 4. The Commission held that at the summary judgment stage, it is the Secretary's burden to show the absence of disputed material facts regarding the asserted defense, not Fama's burden to show the presence of disputed material facts. *Id.* Accordingly, the Commission remanded the case to the ALJ to consider whether the Secretary met this burden.

### F. The ALJ's Second Decision

On April 13, 2023, the ALJ issued a second opinion and order, again granting summary judgment to the Secretary and affirming the citation against Fama. First, the ALJ addressed the question of whether Fama, as a controlling employer, had taken reasonable measures to detect and prevent the violative conditions at the Riley Place worksite. ALJ Decision II at 2. He found that, given the history of safety violations by Cardenas and Galicia, Fama should have conducted more frequent inspections than if that history had not been present. *Id.* at 3. Fama, however, had changed its policies by March of 2019 and now conducted no inspections at all. The ALJ found that "Fama did not just fail to exercise 'reasonable care,' it exercised 'no care'" because the company entirely halted inspections of its worksites. *Id.*

As to the affirmative defense of economic infeasibility, the ALJ re-analyzed the question of burden of proof. Citing the Supreme Court's decision in *Celotex Corp. v. Catrett*, the ALJ noted that the party moving for summary judgment may discharge its burden of proof by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case." ALJ Decision II at 4 (quoting *Celotex*, 477 U.S. 317, 325 (1986)). The ALJ further noted that the extent of Fama's evidence about economic infeasibility was an assertion that compliance with the cited OSHA standards would require the company to hire an additional

supervisor at a cost of $50,000 per year, an amount Fama claims would cause it to go out of business. *Id.* However, the affirmative defense of economic infeasibility has two elements: an employer must demonstrate that (a) compliance with the cited standard is impossible *and* (b) that either the employer used alternative means to protect the employees or that no such alternative means were available. *Id.* at 3-4 & n.4. Regardless of the validity of Fama's assertions as to the first element, Fama offered no evidence as to the second element. *Id.* at 4-5. Accordingly, the ALJ held that the Secretary had "pointed out" the absence of evidence to support Fama's defense and therefore satisfied her burden on summary judgment. The ALJ affirmed the citation against Fama.

Fama again sought discretionary review by the Commission but this time the Commission did not direct review. This petition for review followed.

## III. Standard of Review

The OSH Act specifies the standard of review for a court of appeals reviewing the Commission's findings of fact: "The findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." 29 U.S.C. § 660(a); *Fluor Daniel v. OSHRC*, 295 F.3d 1232, 1236 (11th Cir. 2002). "[S]ubstantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Fluor Daniel*, 295 F.3d at 1236. This

standard is one of "considerable deference." *Id.* The Commission's legal

determinations are only to be overturned if they are arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(a)(2);

*Fluor Daniel*, 295 F.3d at 1236. The Court applies the same standard of review to

an unreviewed ALJ decision as it does to Commission decisions. *See J.A.M.*

*Builders, Inc. v. Herman*, 233 F.3d 1350, 1352, 1354 (11th Cir. 2000).

## SUMMARY OF THE ARGUMENT

Substantial evidence supports the ALJ's conclusion that Fama was liable for

the roofing crew's safety violations as a controlling employer under OSHA's

multi-employer citation policy. A controlling employer is one who has authority to

correct safety and health violations at the worksite, and Fama's management

admitted that Fama has such authority; Fama also exercises this authority, albeit

only occasionally because Fama has chosen to abstain from performing safety

inspections at its roofing worksites, likely in an attempt to avoid OSH Act liability.

This choice also indicates that Fama failed to meet its duty to exercise reasonable

care to prevent or detect and abate safety violations, particularly since Fama knew

that the roofing workers at the Riley Place worksite have a long history of OSHA

violations while working for Fama.

The ALJ also properly granted summary judgment to the Secretary as to

Fama's asserted affirmative defense of economic infeasibility. This defense has

two elements and Fama failed to present any evidence about the second element; the Secretary properly prevailed on summary judgment by pointing out the lack of evidence to support the defense.

Fama's assorted attacks on the multi-employer citation policy itself are forfeited because Fama failed to raise them for the Commission's consideration below, which the OSH Act requires before a court of appeals may consider an issue. All except one of Fama's related attacks on OSHA's definition of "controlling employer" are forfeited for the same reason, and the challenges lack merit in any event.

Accordingly, the Court should deny the petition for review.

## ARGUMENT

### I. Substantial Evidence Supports the ALJ's Finding that Fama Was Liable as a Controlling Employer Because Fama Had Authority Over Safety Conditions at the Worksite and Failed to Conduct Any Inspections Whatsoever Despite Knowing the Crew Had a History of Safety Violations.

An employer may be cited as a controlling employer if it had authority over safety conditions on the worksite and failed to exercise reasonable care to prevent and detect violations. *Fama I*, 2022 WL 2375708 at *4; *McDevitt St. Bovis, Inc.*, 19 BNA OSHC 1108 (No. 97-1918, 2000); *MECP* ¶ X.E.; *see Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 727, 743 (5th Cir. 2018) (upholding OSHA's authority to issue citations to controlling employers). Specifically, liability as a

controlling employer requires two findings: first, that the employer had general supervisory authority over the worksite, including the power to correct safety and health violations, and second, that the employer failed to exercise reasonable care to prevent and detect violations. *MECP* ¶ X.E.1.-2.; *see also Hensel Phelps*, 909 F.3d at 728-29; *McDevitt St. Bovis, Inc*., 19 BNA OSHC at 1109. Substantial evidence supports the ALJ's findings on both counts.

### A. Substantial Evidence Supports the ALJ's Finding that Fama Was a Controlling Employer Because It Had the Ability and Authority to Correct the Roofing Workers' Safety Violations.

The ALJ found that Fama could be cited as a controlling employer because Fama admitted having "actual control over safety," and at least occasionally actually exercised that authority. ALJ Decision I at 10.[10] Substantial evidence supports this conclusion.

"[A] controlling employer is one that "could reasonably be expected to prevent or detect and abate [OSHA] violations due to its supervisory authority and control over the worksite." *Fama I*, 2022 WL 2375708 at *4 (quoting *Stormforce of Jacksonville*, 2021 WL 2582530, at *3 (OSHRC No. 19-0593, 2021)). "The type of control required is not control over the manner and means by which the work product is accomplished," as when determining whether a worker is a

---

[10] The Commission affirmed the ALJ's decision on this point. Remand Order 4.

company's employee, "but control over matters affecting the safety of the workers on the jobsite." *Id.* (quotation marks and alteration omitted). Accordingly, when determining whether an employer had sufficient supervisory authority to be classified as a controlling employer, the primary consideration is the employer's authority to correct safety and health violations. *See, e.g.*, *MECP* ¶ X.E.1. (a controlling employer has "the power to correct safety and health violations itself or require others to correct them"); *IBP, Inc. v. Herman*, 144 F.3d 861, 867 (D.C. Cir. 1998) (indicating that control is demonstrated where an employer has authority to discipline individuals for safety violations); *McDevitt St. Bovis, Inc.*, 19 BNA OSHC at 1109 (No. 97-1918, 2000) (finding general contractor to be controlling employer where it had "authority to demand a subcontractor's compliance with safety requirements, to stop a subcontractor's work if safety violations were observed, and to remove a subcontractor from the worksite").

The undisputed facts in this case show that Fama plainly meets this definition. Martinez and Osorio, Fama's owner and co-manager, admitted that Fama had the power to stop unsafe behavior and to take workers down from a roof. SUMF ¶ 28. This fact *alone* indicates that Fama was a controlling employer, and the details in the record provide additional support for that conclusion. First,

Osorio provided specific examples of Fama's authority over safety matters.[11]  She

admitted that Fama employees will stop workers from engaging in unsafe activity

they witness, including removing them from a roof for not wearing fall protection;

that Fama expects workers to follow owner Martinez's instructions; and that Fama

calls or texts the roofing crew leader regular reminders to wear harnesses and

hardhats.  ALJ Decision I at 10.

Second, Fama demonstrated authority over safety matters by contractually

requiring its crew to comply with OSHA regulations, utilize a safety program, and

conduct weekly toolbox talks.[12]  SUMF ¶¶ 29, 46.  The safety policies that Fama

required its work crews to follow went beyond OSHA's regulations and included

things like a prohibition against cell phone use while working on a roof.  SUMF ¶

31.  Fama expected workers to report safety concerns and injuries to Fama, and

Fama could discipline workers or crew leaders for failing to comply with safety

[11] The ALJ located these examples in Osorio's deposition, which was attached as
an exhibit to the Secretary's motion for summary judgment and not disputed by
Fama.  *See* ALJ Decision I at 10.

[12] There is no merit to Fama's argument, Pet. Br. 30-31, that it successfully
contracted away its safety obligations by contractually requiring the roofing crew
to comply with OSHA standards.  To the contrary, this contractual element
indicates that Fama exercised control over the workers' safety by (nominally)
imposing safe behaviors as a condition of the job. Moreover, an employer cannot
use a private contract to evade its responsibilities under the OSH Act.  *See Armor
Elevator Co., Inc.*, 1 BNA OSHC 1409, 1973 WL 4264 at *1, n.2 (Nos. 425 & 426,
1973).

requirements.  SUMF ¶¶ 30, 32.  When Martinez, Fama's owner, learned that CSHO Greenfield was conducting an inspection, he ordered the work crew to leave the worksite, which they did.  SUMF ¶ 35.

Finally, Fama's supervisory authority over the safety of its work crews is demonstrated through the previous settlement agreements in which Fama agreed to improve worker safety by conducting worksite inspections and, in one case, to arrange for a third-party safety inspection.  SUMF ¶¶ 23-24.  If Fama lacked supervisory authority over the work crews' compliance with health and safety standards, it is unclear how or why it would repeatedly agree to exercise such authority to settle prior OSHA citations.

Fama argues that it cannot be a controlling employer because it is merely a "mid tier contractor" and that its "occasional visits to worksites" do not establish control but rather show that Fama has "disavow[ed] micromanagement."  Pet. Br. 20, 23.  But the fact that Fama rarely visits its worksites and does not maintain a regular presence there does not prove that it lacked supervisory authority.  As explained *supra*, there is substantial evidence in the record to support the ALJ's finding that Fama did have the requisite authority, and Fama's conscious decision to remain absent from the worksites—thereby limiting its ability to regularly exercise this authority—does not affect the ALJ's determination.

Fama's comparison of this case to *IBP, Inc. v. Herman*, 144 F.3d 861 (D.C. Cir. 1998) is inapt. *See* Pet. Br. 23-24. In that case, a meatpacking plant hired an independent contractor to clean its machinery after working hours each day. 144 F.3d at 863. One of the cleaning company's employees was killed after failing to ensure a machine was disconnected from its power source before cleaning it, as the cleaning company's own procedures required. *Id.* OSHA cited the meatpacking plant as a controlling employer on the theory that the plant's right to rescind its contract with the cleaning company constituted sufficient control over the hazard. *Id.* at 863-64. The D.C. Circuit disagreed, holding that the meatpacking plant's theoretical ability to use the contract to pressure the cleaning company to follow its own safety procedures was not sufficient to making the meatpacking plant a controlling employer in that instance. *Id.* at 866-67. *IBP* has no bearing on this case, however, where Fama *admits* its own authority over the roofing workers' safety and at least occasionally exercises that authority.

At bottom, Fama argues that it lacks control over the roofing workers' safety because it never goes to the worksite to exercise control. But Fama's own management concedes that the company has the power to stop unsafe work and to ensure that workers wear hardhats and use fall protection. ALJ Decision I at 10. Fama's conscious abdication of its duty to take reasonable measures to ensure worker safety does not prove that it lacked the authority to do so.

## B. Substantial Evidence Supports the ALJ's Finding that Fama Failed to Exercise Reasonable Care to Detect and Prevent the Workers' OSHA Violations by Entirely Forgoing Workplace Inspections.

Having determined that Fama was a controlling employer, the ALJ then found that Fama failed to meet its duty to take reasonable measures to prevent or detect and abate the violations at issue in this case. ALJ Decision II at 2-3. This finding, too, is supported by substantial evidence.

A controlling employer is liable for a contractor's violations when it fails to exercise reasonable care to prevent or detect violations on the worksite. *Fama I*, 2022 WL 2375708, at *5 (citing MECP § X.E.2; *Stormforce of Jacksonville*, 2021 WL 2582530, at *8); *see also Centex-Rooney Constr. Co.*, 16 BNA OSHC 2127, 2130 (No. 92-0851, 1994); *Grossman Steel & Aluminum Corp.*, 4 BNA OSHC 1185, 1188 (No. 12775, 1976). A controlling employer's duty to exercise reasonable care "'is less than what is required of an employer with respect to protecting its own employees,'" *Summit Contractors, Inc.*, 22 BNA OSHC at 1781 (quoting *MECP* ¶ X.E.2.), but is more than nothing.

"Determining whether a controlling employer has met its duty to exercise reasonable care involves analyzing several factors: those that relate to the alleged violative condition itself and those that relate to the employer's duty to monitor or inspect." *Suncor Energy (U.S.A.) Inc.*, 27 BNA OSHC 1713, 1717 (No. 13-0900,

2019).[13] This Court will "assess a controlling employer's conduct 'in light of objective factors,' including the 'safety history' of the contractors involved." *Fama I*, 2022 WL 2375708 at *4 (quoting *Stormforce of Jacksonville*, 2021 WL 2582530, at *8.

Here, Fama admits that it made *no* efforts—much less "reasonable" ones— to prevent or detect and abate the violations at issue, as it repeatedly emphasizes that it does not visit worksites for the purpose of monitoring or inspecting worker safety. SUMF ¶¶ 27, 45; Pet. Br. 11, 23, 31. This failure to conduct *any* regular inspections falls well below Fama's required duty of reasonable care given the facts of this case: Fama has an extensive history of OSHA violations, many involving the specific roofing workers in this case; Fama is aware of the hazardous nature of roofing work in light of its past citations and settlement agreements agreeing to take corrective action; and the violations in this case would have been plainly visible during even a brief inspection. Given these facts, and particularly in light of Fama's significant safety record, if anything Fama had a heightened duty

---

[13] When determining whether to issue a citation to a controlling employer, OSHA evaluates reasonable care based on factors such as whether the controlling employer conducted periodic inspections of appropriate frequency; implemented an effective system for promptly correcting hazards; and enforced compliance through an effective, graduated system of enforcement and follow-up inspections. *MECP* ¶ X.E.4. To determine the appropriate frequency of inspection, OSHA considers the nature of the work, the scale of the project, and the safety history and experience of the contractors involved. *Id.* ¶ X.E.3.

compared to other controlling employers to detect and abate violations on site. *MECP* ¶ X.E.3.d. ("More frequent inspections are normally needed if the controlling employer knows that the other employer has a history of non-compliance."). But Fama made no effort whatsoever.

Moreover, less than two years ago this Court highlighted Fama's obligation as a controlling employer in circumstances virtually identical to those in this case. *Fama I*, 2022 WL 2375708 at *5. Nothing has changed since then except that Fama has discontinued its safety training program, SUMF ¶ 26, meaning it is doing a *worse* job of exercising reasonable care than it did when this Court last found it liable.[14]

Fama does not present any meaningful argument to challenge the ALJ's finding that by conducting no workplace inspections, Fama failed to exercise reasonable care. Instead, Fama argues only that its absence from the worksite demonstrates its lack of control over the hazardous conditions. Pet. Br. 23, 31. But as explained above, Fama cannot wish away the obligations that come with its

---

[14] Both the ALJ and the Commission noted that the record in *Fama I* was not made part of the record in this case and accordingly did not consider facts from that case when assessing Fama's liability here. *See* Remand Order at 4 n.6.

authority by failing to fulfill them.  Accordingly, the ALJ's finding that Fama was

a liable controlling employer should be affirmed. [15]

## II.    The ALJ Properly Granted Summary Judgment to the Secretary as to Fama's Affirmative Defense of Economic Infeasibility Because the Defense Has Two Elements and Fama Entirely Failed to Present Any Evidence Concerning the Second Element.

The ALJ properly ruled that the Secretary was entitled to summary judgment

notwithstanding Fama's attempt to raise the affirmative defense of economic

infeasibility because Fama failed to present evidence creating a genuine issue of

material fact as to that defense.  A vague or incomplete pleading of an affirmative

defense is insufficient to defeat summary judgment.  *See Blue Cross & Blue Shield*

*of Alabama v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990) ("Even were Weitz

correct as a substantive matter that certain of plaintiffs' claims are precluded by the

statute of limitations, the inclusion of a vague allegation regarding the statute of

limitations in an answer would be insufficient to defeat a motion for summary

judgment."); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is

made and supported as provided in this rule, an adverse party may not rest upon

the mere allegations or denials of his pleading, but his response, by affidavits or as

---

[15] As indicated above, Fama did not dispute that the standards were violated and does not now challenge the ALJ's determination that the cited violations occurred. *See* ALJ Decision I at 12-14.

otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

The affirmative defense of infeasibility (whether of the economic or technical variety) has two elements. To establish the defense, an employer must prove "(i) that compliance with a particular standard either is impossible or will render performance of the work impossible; and (ii) that it (the employer) undertook alternative steps to protect its workers (or that no such steps were available)." *M.C. Dean, Inc. v. Secretary of Labor*, 505 Fed. App'x 929, 936-37 (11th Cir. 2013) (quoting *Harry C. Crooker & Sons, Inc. v. OSHRC*, 537 F.3d 79, 82 (1st Cir. 2008)). *See also Gregory & Cook, Inc.*, 17 BNA OSHC 1189, 1995 WL 242603 at *2 (No. 92-1891, 1995) (employer must show that "(1) the means of compliance prescribed by the applicable standard would have been infeasible, in that (a) its implementation would have been technologically or economically infeasible or (b) necessary work operations would have been technologically or economically infeasible after its implementation, and (2) there would have been no feasible alternative means of protection") (quoting *V.I.P. Structures, Inc.*, 16 BNA OSHC 1873, 1874, (No. 91-1167, 1994)).

Fama suggests that this two-part test only applies to defenses of technological infeasibility, and that the second element should be assumed when it comes to economic infeasibility. Pet. Br. 27. This suggestion is contrary to

Commission case law, which clearly articulates the two-part test with respect to

both economic and technological infeasibility. *See Gregory & Cook*, 1995 WL

242603 at *2; *see also Armstrong Steel Erectors, Inc.*, 17 BNA OSHC 1385, 1995

WL 561592 at *3 (No. 92-262, 1995) (describing the second prong as an

"important element" of the infeasibility defense). This Court has also stated the

two-part test in a case involving economic infeasibility. *M.C. Dean, Inc.*, 505 Fed.

App'x at 936-37. Accordingly, there is no "different standard" for economic

infeasibility, Pet. Br. 27, that would let Fama off the hook.

As the ALJ found, the extent of Fama's evidence supporting its economic

infeasibility defense is an assertion that compliance with the cited standards would

require the company to hire a new supervisor at a cost of $50,000, which would

cause Fama to go out of business. ALJ Decision II at 4; Pet. Br. 25. This arguably

creates a question of material fact as to the first element of the defense – although

Fama's statement to this Court that "OSHA demands that Fama hire supervisors,"

Pet. Br. 24, is patently false and there is no reason to think that workplace safety

inspections could not be performed by an existing Fama employee. But in any

event, Fama offered no evidence about the second element of the defense, under

which Fama must show that it took alternative steps to protect the workers or that

no such steps were available. *M.C. Dean, Inc.*, 505 Fed. App'x at 936. *See* ALJ

Decision II at 5 ("After carefully reviewing the record evidence, the court agrees

with the Secretary and concludes there is a complete failure of proof concerning the second element").

On appeal, Fama attempts to challenge this finding by the ALJ but offers only a muddled discussion of the second element. Fama says it met its burden as to the second element because it "described at least one feasible alternative means of protection, *e.g.*, hiring a supervisor." Pet. Br. 28. This makes no sense. Fama's obligation under the second element is to show there are *no* feasible alternative means of protecting the workers *other than* complying with the cited standards (or that there was an alternative means and that Fama used it). Fama's idea of hiring a supervisor is not an alternative to complying with the cited standards; it is what Fama dubiously claims it would need to do *in order to* comply with the standards. The ALJ properly found that Fama failed to supply any evidence about the second element of its defense.

Given this failure, the ALJ correctly applied Supreme Court case law holding that the party moving for summary judgment – here, the Secretary – need only "point[] out . . . that there is an absence of evidence to support the nonmoving party's case." ALJ Decision II at 4 (quoting *Celotex*, 477 U.S. at 325). Because the Secretary identified the absence of evidence to support Fama's defense, the ALJ appropriately granted summary judgment. *See Off. of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997) ("Thus, summary judgment is

appropriate where the defendant fails to come forward with evidence sufficient to dispute an element of the plaintiff's case or to support an affirmative defense.") (citing *Riberglass, Inc. v. Techni–Glass Indus., Inc.*, 804 F.2d 1577, 1580 (11th Cir.1986) (affirming summary judgment in favor of plaintiff), *reh'g granted and rev'd on other grounds*, 811 F.2d 565 (11th Cir. 1987) (district court wrongly considered certain evidence)).  This Court should reject Fama's challenge to this aspect of the ALJ's ruling.

## III.  Fama's Assorted Attacks on OSHA's Multi-Employer Citation Policy Are Forfeited And/Or Lack Merit.

Fama's brief is laced with a wide variety of attacks on OSHA's multi-employer citation policy.  Although Fama purports to concede that it is "well settled" that OSHA has authority "to issue citations to controlling employers at multiemployer worksites," Pet. Br. 14, Fama nonetheless argues that the policy is (a) "unconstitutionally vague and unreasonable"; (b) an "invalid interpretation" of the OSH Act; (c) "impermissible agency rulemaking"; and (d) an "unpromulgated legislative rule."  Pet. Br. 12.  These challenges to the multi-employer citation policy are forfeited because Fama did not raise them in its petition for discretionary review to the Commission. [16]  *See Fama I*, 2022 WL 2375708 at *4 (Fama barred

---

[16] In its petition seeking discretionary review of the ALJ's first decision, Fama (a) challenged certain of the ALJ's factual findings; (b) asked the Commission to hold that only general contractors, not "mid tier subcontractors lacking control over the jobsite," could be held liable under the multi-employer citation policy, and (c)

from challenging validity of multi-employer policy because it did not raise the issue to the Commission); 29 U.S.C. § 660(a) (absent extraordinary circumstances, court of appeals may not consider any objection not first raised to the Commission).[17]

Fama also lodges numerous objections against "OSHA's definition of controlling employer." Pet. Br. 14. With the exception of the first argument discussed below – that only general contractors, not "mid-tier contractors," should be deemed controlling employers – Fama raised none of these objections before the Commission, and the Court should accordingly deem them also forfeited. Each fails on the merits in any event.

First, Fama's argument that the definition of controlling employer should be limited to "general or other contractors with actual onsite control" and not "mid-

---

challenged the ALJ's ruling on the economic infeasibility affirmative defense. Fama First PDR at 2 (Certified List No. 70). When seeking discretionary review of the ALJ's second decision, Fama again raised the economic infeasibility issue and also challenged the ALJ's finding that Fama was a controlling employer; it did not raise the general vs. mid-tier contractor issue. Fama Second PDR at 2-4 (Certified List No. 78). In neither petition did Fama challenge the multi-employer citation policy itself.

[17] Even were this issue properly raised, it would fail on the merits. As noted *supra*, seven courts of appeals have held that the multi-employer citation policy is a valid exercise of the Secretary's statutory enforcement authority. And although this Court has not ruled squarely on the issue, in *Fama I* this Court noted that even had Fama's argument not been forfeited, the court "would not be persuaded" by the argument. *Fama I*, 2022 WL 2375708 at *4.

tier contractors" like Fama "who lack real control" is really just an argument that the ALJ erred in concluding Fama was a controlling employer. Pet. Br. 19-20. In other words, this is an argument that Fama should not be deemed a controlling employer based on the facts in this case. As explained in Section I above, however, substantial evidence supports the ALJ's finding that Fama was a controlling employer within the meaning of the multi-employer citation policy because of its authority over safety matters at the Riley Place worksite. And Fama's enumeration of cases where a general contractor was found to be a controlling employer, Pet. Br. 21, does not demonstrate that a mid-tier subcontractor cannot also be a controlling employer if it has the requisite authority over workplace safety conditions, as whether a controlling employer designation is appropriate depends on the specific facts of each case.

Second, Fama provides an incorrect history of the multi-employer citation policy, claiming without support that the controlling employer aspect of the policy originated in 1981 and was promulgated pursuant to notice-and-comment rulemaking procedures. Pet. Br. 13. This is not true. OSHA's citation of controlling employers dates to the 1970s, and the citation policy – which, as Fama correctly notes, Pet. Br. 12, is not a regulation but the agency's interpretation of its statutory enforcement authority – was never subject to notice and comment

precisely because it is not a regulation.[18] *See* 5 U.S.C. § 553(b)(A) (exempting "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" from notice-and-comment requirements). Accordingly, Fama's contention that a "change" to the multi-employer policy (a change which Fama has not even identified) requires notice and comment is without merit. Pet. Br. 13.

This Court should likewise reject Fama's argument that OSHA engages in selective enforcement of the multi-employer citation policy. Fama contends – again, without support – that OSHA cited only Fama and not the builder that was the general contractor over the Riley Place worksite. Pet. Br. 18-19. Even if this is the case, the Secretary maintains full discretion to issue citations or not. *Cuyahoga Valley Ry. v. United Transp. Union*, 474 U.S. 3, 5 (1985) (holding Secretary has sole authority to enforce the Act, including issuance and withdrawal of citations). Fama has provided absolutely no basis here for overturning its own citation.

Finally, Fama states that the definition of controlling employer is unacceptably vague, and that OSHA is, through the multi-employer citation policy, imposing strict liability on employers "that it arbitrarily deems to be controlling employers." Pet. Br. 17, 19. This argument is meritless. The term "controlling

---

[18] The Eighth Circuit's opinion in *Solis v. Summit Contractors, Inc.* provides a comprehensive history of the multi-employer citation policy. 558 F.3d 815, 818-22 (8th Cir. 2009).

employer" is clearly defined by the policy and by case law interpreting the policy. *See, e.g.*, *Fama I*, 2022 WL 2375708 at *4; *MECP* ¶ X.E.1. And not only are controlling employers not subject to strict liability, they are subject to a lesser duty than an employer whose own employees are exposed to hazardous workplace conditions. *Summit Contractors, Inc.*, 22 BNA OSHC at 1781; *MECP* ¶ X.E.2. Fama's attempt to portray itself as the victim of arbitrary agency action fails.

# CONCLUSION

For the foregoing reasons, the Court should deny the petition for review and affirm the final order of the Commission.

Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

EDMUND C. BAIRD
Associate Solicitor for
  Occupational Safety and Health

HEATHER R. PHILLIPS
Counsel for Appellate Litigation

/s/ *Amy S. Tryon*
AMY S. TRYON
Senior Attorney
U.S. Department of Labor
200 Constitution Ave., NW
Room S-4004
Washington, DC 20210
(202) 693-5447
tryon.amy.s@dol.gov

**CERTIFICATE OF COMPLIANCE**

I hereby certify that Respondent's brief contains 7,663 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, and complies with the type-volume limitations in Fed. R. App. P. 32(a)(7)(B). The font used was Times New Roman 14-point proportional spaced type. The brief was prepared using Microsoft Word 2021.

/s/ *Amy S. Tryon*
AMY S. TRYON
Senior Attorney
U.S. Department of Labor
200 Constitution Ave., NW
Room S-4004
Washington, DC 20210
(202) 693-5447
tryon.amy.s@dol.gov

March 15, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 15, 2024, I filed a copy of the foregoing brief via the Court's CM/ECF Electronic Filing System, providing service on registered counsel for Petitioner.

/s/ *Amy S. Tryon*
AMY S. TRYON
Senior Attorney
U.S. Department of Labor
200 Constitution Ave., NW
Room S-4004
Washington, DC 20210
(202) 693-5447
tryon.amy.s@dol.gov

March 15, 2024